UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMILO ROSALES MORALES, | |
| Petitioner, | No. 1:26-CV-00693 |
| v. | Judge Edmond E. Chang |
| BRINSON SWEARINGEN, Sheriff of Clay County Jail,[1] | |
| Respondent. | |

ORDER

Camilo Rosales Morales, a citizen of Mexico, entered the United States without inspection nearly 20 years ago. R. 1, Pet. ¶¶ 15, 41; R. 11, Resp. at 1–2. The government arrested Rosales Morales "without a warrant," and he is not yet scheduled to appear before an immigration judge. R. 10, Gov't's Status Report at 1–2. Rosales Morales was originally held at the Broadview Detention Center and now is detained at the Clay County Jail in Brazil, Indiana, without an opportunity for a bond hearing. *Id.*; Pet. ¶¶ 3, 5. He petitions this Court for a writ of habeas corpus, arguing that his mandatory detention under 8 U.S.C. § 1225(b)(2)(A) is unlawful and that he should be given a bond hearing because his detention instead falls under 8 U.S.C. § 1226(a).[2] Pet. ¶¶ 5–7.

The government opposes Rosales Morales's request and adopts the brief it submitted in another case in this district "in order to preserve those arguments for

---

[1] Because "the default rule is that the proper respondent is the warden of the facility where the [petitioner] is being held," *Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)), the Court substitutes Brinson Swearingen as the proper respondent under Civil Rule 25(d). *See* R. 10, Gov't's Status Report at 2.

[2] This Court has subject matter jurisdiction over this case under 28 U.S.C. § 2241, which applies generally to habeas writs. As explained below, no immigration-specific statute removes the petition from the jurisdictional grant.

potential appeal." Resp. at 2–3. The government similarly adopted that same brief in other cases previously before this Court. *See Guartazaca Sumba v. Crowley*, 2025 WL 3126512, at *2 (N.D. Ill. Nov. 9, 2025); *Ruiz Melesio v. Crowley*, No. 1:25-cv-13291, at 1–2 (N.D. Ill. Nov. 17, 2025); *Magana Lara v. Schmidt*, No. 1:25-cv-13730, at 1–2 (N.D. Ill. Nov. 20, 2025); *Morales Perez v. Walsh*, 2026 WL 44777, at *2–4 (N.D. Ill. Jan. 7, 2026); *Penaloza Arellano v. Swearingen*, No. 1:25-cv-15269 (N.D. Ill. Jan. 17, 2026). For the same reasons discussed in those decisions and briefly summarized below, the Court grants Rosales Morales's petition in general and issues a conditional writ requiring a bond hearing by a date certain (rather than requiring immediate release).

First, the government again contends that this Court lacks jurisdiction to consider Rosales Morales's petition under 8 U.S.C. § 1252(a)(2)(B)(ii), (b)(9), and (g). But none of those jurisdiction-stripping provisions apply here. Rosales Morales's challenge to "the statutory framework that permits his detention without bail" is not the kind of discretionary decision for which § 1252(a)(2)(B)(ii) bars judicial review. *Demore v. Kim*, 538 U.S. 510, 517 (2003). And the government's decision to impose mandatory detention is too attenuated from "any action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9), to be barred by that provision either. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (plurality opinion) (holding that government's "expansive interpretation of § 1252(b)(9) would lead to staggering results"); *see also id.* at 355 (Breyer, J., dissenting). Nor does 8 U.S.C. § 1252(g) bar judicial review: the provision reaches only "three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphases in original) (cleaned up).[3] Rosales Morales's challenge to his detention is not any of those. *See Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999). And notably, although the government cites a small minority of decisions denying relief on the merits of the mandatory-detention issue, the government cites *none* supporting its view on jurisdiction. Indeed, the cases cited by the government that

---

[3]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

The government again does not specify whether it adopts all of the arguments made in its earlier briefing, so for the sake of completeness, the Court refers to its earlier discussion of why failure to exhaust, if raised as an affirmative defense by the government, would fail. *See Guartazaca Sumba*, 2025 WL 3126512, at *3 n.8.

2

considered jurisdictional obstacles concluded that federal jurisdiction was secure. *See, e.g.*, *Cruz Rodriguez v. Olson*, — F. Supp. 3d —, 2026 WL 63613, at *2–4 (N.D. Ill. Jan. 8, 2026).

Reaching the merits, the Court concludes that Rosales Morales is entitled to a bond hearing because his detention arises under 8 U.S.C. § 1226(a) instead of 8 U.S.C. § 1225(b)(2)(A). For § 1225(b)(2)(A) to apply, Rosales Morales must be an "applicant for admission" who is "seeking admission" and "is not clearly and beyond a doubt entitled to be admitted." *See also* R. 11-1, Gov't's *H.G.V.U.* Resp. Br. at 14–21. Rosales Morales is not "seeking admission" based on that term's plain meaning: he entered the country more than two decades ago and thus does not remain in a state of seeking or requesting admission *into* the country. That is why the Supreme Court has noted that § 1225(b) "applies primarily to aliens seeking *entry* into the United States," whereas § 1226 applies to "aliens *already in the country*." *Jennings*, 583 U.S. at 289, 297 (emphases added).

The government's reading also violates the canon against surplusage in two ways. First, the government's interpretation assigns the same meaning to the distinct terms "alien seeking admission" and "applicant for admission." Gov't's *H.G.V.U.* Resp. Br. at 19. But the interpretive goal to give every clause or word in a statute some operative meaning "is strongest when an interpretation would render superfluous another part of the *same* statutory scheme," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (emphasis added), and here the terms are mere words apart within the same subparagraph. Second, the government's position would render surplusage 8 U.S.C. § 1226(c)(1)(E), which imposes mandatory detention for some aliens, including those who have unlawfully entered the country *and* were accused or convicted of certain crimes. By implication, Rosales Morales, who is not claimed to have committed any such crimes, would be deemed to be detained (before having a bond hearing) under § 1226(a).

The government also acknowledges that the Seventh Circuit has recently addressed the issue, *see Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–62 (7th Cir. 2025), but the government contends that this decision is mere dicta. Gov't's Status Report at 2; Resp. at 3 (citing *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991) ("Decisions by motions panels are summary in character, made often on a scanty record, and not entitled to the weight of decision made after plenary submission.")). The Court already has explained why *Castañon-Nava*—a reasoned decision by the Seventh Circuit that was *not* "summary in character"—may be binding

precedent, *Morales Perez*, 2026 WL 44777, at *2, and in any event, the Court agrees with *Castañon-Nava* on the legal question. Against all of this, the government cites 17 cases (against hundreds, *see Barco Mercardo v. Francis*, — F. Supp. 3d —, 2025 WL 3295903, at *4 & nn.22–23 (S.D.N.Y. Nov. 26, 2025)), that have decided otherwise and denied habeas relief. Resp. at 3–4. *Cruz Rodriguez* is representative of those decisions, and the Court has explained its respectful disagreement. *See Morales Perez*, 2026 WL 44777, at *4–5. For convenience's sake, the Court repeats the gist of that analysis here.

To support its detention decision, the government endorses two, contradictory positions. At times, the government seems to argue that the two terms are synonymous. *See, e.g.*, Gov't's *H.G.V.U.* Resp. Br. at 19; *Mejia Olalde v. Noem*, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025). But *Cruz Rodriguez* more expansively holds that the two terms are *not* synonymous; rather, aliens "seeking admission" are a "superset" in which all "applicants for admission" fall. — F. Supp. 3d —, 2026 WL 63613, at *6. But either interpretation creates three problems. First, both positions rely on the use of the word "otherwise" in § 1225(a)(3) to denote a relationship between the two terms. But "otherwise" here does not define or encapsulate the preceding term—"applicants for admission"—within the term aliens "seeking admission." *See Singh v. English*, 2025 WL 3713715, at *3–4 (N.D. Ind. Dec. 23, 2025) (citing *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008)). Second, the government's reading, if accepted, would require concluding that Congress defined the narrower term ("applicant for admission") while leaving undefined (for some unknown reason) what would apparently be the crucial, general term ("alien seeking admission") that sweeps more aliens into the mandatory-detention provision. *See Castañon-Nava*, 161 F.4th at 1061 ("But it is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' …."). Third, the only interpretation that avoids any surplusage is one that divides in part aliens who are "applicants for admission" from those who are "seeking admission." In many cases, both terms will apply to an alien, but in other contexts, one term or the other may not apply. *See Singh*, 2025 WL 3713715, at *4 (offering example of a human-trafficking victim who was involuntarily brought into the United States as an alien who is not "seeking" admission); *see also Bufkin v. Collins*, 604 U.S. 369, 387 (2025) ("The canon against surplusage can be meaningful when a competing interpretation would avoid superfluity.").

In response to the second surplusage problem relating to § 1226(c)(1)(E), *Cruz Rodriguez* holds that only part of § 1226(c)(1)(E) overlaps with prior provisions. — F.

4

Supp. 3d —, 2026 WL 63613, at *8. The Court respectfully disagrees. First, to qualify for mandatory detention under § 1226(c)(1)(E), the alien must first be inadmissible for one of three reasons. But if the alien is inadmissible, then they are "applicants for admission" because they never have been lawfully admitted. *Cf. Cruz Rodriguez*, — F. Supp. 3d —, 2026 WL 63613, at *5–6. The government's expansive reading thus nullifies the entirety of § 1226(c)(1)(E), which requires the additional element of the charge or commission of a crime. Second, even if it were true that only *part* of § 1226(c)(1)(E) were rendered surplusage, that too would be enough to reject the government's interpretation. The Laken Riley Act reflects the understanding by both Congress and the Executive—consistent with Rosales Morales's position—of § 1225(b)(2)(A) and § 1226. *See Monsalvo v. Bondi*, 604 U.S. 712, 725 (2025) (noting presumption that "new provision should be understood to work in harmony with what has come before," including "longstanding administrative construction").

The Court addresses one more, surplusage-related conclusion from *Cruz Rodriguez*: that the relationship between § 1225(b)(2)(A) and § 1226 is mere "overlap." — F. Supp. 3d —, 2026 WL 63613, at *7. But *Cruz Rodriguez* also acknowledges that § 1226 is the "general provision" whereas § 1225(b)(2)(A) is a "specific provision." *Id.* But under the interpretation set forth in *Cruz Rodriguez*, the specific provision has such wide breadth that it swallows most applications of the general provision. The more plausible interpretation—that "seeking admission" has a different meaning than "applicant for admission," so Rosales Morales is subject only to discretionary detention under § 1226—thus gives more balance between the scopes of the specific § 1225(b)(2)(A) and the general § 1226. *See Jennings*, 583 U.S. at 289, 297. And in any event, the general/specific canon cited in *Cruz Rodriguez* arguably applies only when "the compared statutes are *irreconcilably* conflicting." *See Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692, 698–99 (D.C. Cir. 2014) (emphasis added). But here no irreconcilable conflict exists, only (at most) overlap.

The Court resolves Rosales Morales's statutory argument in his favor, so the Court does not reach the merits of his constitutional claim premised on due process. *Camreta v. Greene*, 563 U.S. 692, 705 (2011).

The Court grants Rosales Morales's petition, R. 1. Because the Court holds that Rosales Morales's detention under 8 U.S.C. § 1225(b)(2)(A) violates the Immigration and Nationality Act, Rosales Morales is entitled to a bond hearing under 8 U.S.C. § 1226(a). *See* 8 C.F.R. §§ 1003.19, 1236.1(c)(8), (d). The Court thus issues a conditional writ of habeas corpus, directing the Respondent, on or before February 11,

2026, either to afford Rosales Morales a bond hearing that complies with federal laws and regulations or to release him under reasonable conditions of supervision. The Court also directs the parties to file a status report on or before February 13, 2026, that addresses Rosales Morales's release status, whether he received a bond hearing, and the result of that bond hearing.

ENTERED:

       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: February 3, 2026